[Civ. No. 450.  Third Appellate District.—June 22, 1908.]

## ANNIE E. TEICH, Appellant, v. SAN JOSE SAFE DEPOSIT BANK OF SAVINGS, Respondent.

CONSTRUCTIVE TRUST—STIPULATION BY EQUITABLE MORTGAGEE TO REDEEM FROM TAX SALES—INEQUITABLE PURCHASE FROM STATE.— Where the parties hereto filed a stipulation in the supreme court in litigation pending therein in which defendant bank was claiming as equitable mortgagee of plaintiff's property, by which it was stipulated that defendant was to redeem from all tax sales, upon agreed conditions, on which plaintiff relied, and defendant, in violation of the stipulation, allowed title under tax sales to pass from the state, and then bought the same for its own benefit, defend-

ant bank was thereby guilty of a constructive fraud upon the plaintiff, and may be charged as an involuntary trustee for the benefit of the plaintiff, upon equitable conditions.

ID.—"CONSTRUCTIVE FRAUD"—CODE DEFINITIONS.—The act of the defendant in purchasing the title from the state constituted "constructive fraud" as described in subdivision 1 of section 1573 of the Civil Code, as consisting "in any breach of duty, which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him."

ID.—CONSTRUCTIVE TRUSTS—ENFORCEMENT IN EQUITY.—Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such relation; and if a party obtains the legal title to property "in any" unconscientious manner, so that he cannot equitably retain the property, equity impresses a constructive trust thereupon in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.

ID.—EFFECT OF STIPULATION—BREACH OF DUTY BY BANK.—The stipulation did not merely confer upon the bank an option to redeem, but the language used indicated its purpose to redeem; and it was its duty, if it changed its purpose, to notify the plaintiff to protect herself, and where it appears that the plaintiff was never notified that the stipulation was repudiated or disavowed, the bank failed of its duty under the stipulation.

ID.—EQUITY TO BE DONE BY PLAINTIFF—REFUNDING OF MONEY PAID—REDEMPTION FROM OUTLAWED MORTGAGE.—In order to entitle the plaintiff to enforce a trust in the legal title of defendant for plaintiff's benefit, the plaintiff must do equity by refunding to the defendant bank all of the money paid thereby to protect the title, including the amount loaned by it to plaintiff's predecessor to redeem from a foreclosure sale, whereby it became an equitable mortgagee of the property, if plaintiff is not shown to be a *bona fide* purchaser for value without notice thereof. If plaintiff is bound by the equitable mortgage for the purpose of doing equity, it is immaterial that it is subject to the statute of limitations.

APPEAL from a judgment of the Superior Court of Madera County. H. C. Gesford, Judge presiding.

The facts are stated in the opinion of the court.

N. C. Coldwell, M. K. Harris, and S. L. Strother, for Appellant.

Frank H. Short, for Respondent.

BURNETT, J.—The main contention in this cause hinges upon the following stipulation:

"In the Supreme Court of the State of California.

"San Jose Safe Deposit Bank of Savings (a corporation), plaintiff and respondent, v. Bank of Madera (a corporation), et al., defendants and appellants.

"Whereas, there is now pending in the Supreme Court of the State of California an action entitled San Jose Safe Deposit Bank of Savings, plaintiff and respondent, v. Bank of Madera, et al., defendants and appellants . . . said action being prosecuted by the plaintiff for the purpose of foreclosing what is claimed by plaintiff to be an equitable mortgage upon the property described in the complaint in said action, to wit, lot four (4) block forty (40) of the town of Madera, California.

"And, whereas, pending the litigation concerning said property, certain taxes have accumulated thereon, and certain tax sales have been made of said property for taxes levied and assessed for state, county and municipal purposes, and there is now due and owing certain taxes on said property, the plaintiff in said action is desirous of paying the amount of taxes which should be levied and assessed against said mortgage interest in said property if it should ultimately be determined that plaintiff has an equitable mortgage on said property, but no assessment of said mortgage interest has ever been made or levied against the same. It is therefore stipulated by and between the plaintiff herein, and the defendants and Annie E. Teich, the owner of said property, that the plaintiff, San Jose Safe Deposit Bank of Savings may effect a redemption of said property from any and all tax sales made of the same upon any legal and valid assessment of said property and pay and discharge any taxes now due thereon upon any valid and legal assessment thereof. And it is further stipulated that any amount of money which may be necessary for said plaintiff to pay for the purpose of effecting such redemption or of discharging any valid assessment against said property, shall be reimbursed to plaintiff by the defendants in said action or by the owner of said property, to wit, Annie E. Teich. It being understood, however, that in the event that it be finally determined that the San Jose Safe Deposit Bank of Savings has an equitable

mortgage on said property, that in making such reimbursement, the said plaintiff shall be charged with the taxes which should have been levied and assessed against its mortgage interest therein . . . for the several years since the date of its equitable mortgage, to wit, since the 18th day of February, 1895, and if it should be determined that plaintiff has no equitable mortgage, or any claim against the same, then the said Annie E. Teich agrees to reimburse said plaintiff for any money it may have paid out to redeem said property from any tax sales, or to pay and discharge any valid tax thereon.

"Any amount of money advanced by plaintiff for the purpose hereinbefore mentioned which the event of said action shall determine to be on defendant's account, or account of said owner shall draw interest from the date of such payment by it, at the rate of 3% per annum.

"(Signed)   F. A. FEE,
"Attorney for Plaintiff and Respondent.
"M. K. HARRIS,
"Attorney for Defendants and Appellants.
"Dated Nov., 1903."

It seems that plaintiff received a deed to the property February 17, 1902, from her mother, Mary Dworack, her brother, Charles A. Dworack, and from the Bank of Madera, the defendants in the said action mentioned in the stipulation as pending in the supreme court, and which action has been decided this day by this court. Upon the twenty-sixth day of June, 1897, the property was sold to the state for delinquent taxes for the fiscal year of 1896. As the property was not redeemed a deed was executed to the state on the twenty-fourth day of January, 1903. No taxes had been paid upon the property since 1895, and no redemption from the state had been effected by anyone, and so, in pursuance of the written authorization of the state controller dated July 11, 1904, the tax collector of Madera county, proceeding according to law, on the sixth day of August, 1904, sold the property for $950 to defendant herein.

The plaintiff claims that by virtue of said stipulation the property is charged with a trust, and that the bank holds it for her use and benefit. The circumstances under which the said purchase was made are as follows: On August 6, 1904,

Mr. Fee saw in a newspaper the notice of the sale of the property to take place at 10 o'clock that day. Some time before he had requested the tax collector to inform him if anyone made application for the sale of the property.· This the tax collector promised to do, but failed to keep his promise. Mr. Fee sought Judge Ostrander, attorney for the party desiring to purchase, and asked him if he proposed to bid on the property. On receiving an affirmative answer Mr. Fee stated that the defendant herein had trusted him implicitly in the matter; that he had assured the bank that he would not permit a sale of the property; that the whole matter had been intrusted to his care; that he would like to have the property sold provided he could buy it for his client; that if the judge would bid the amount of the tax and allow Mr. Fee to make a further bid and become the purchaser the latter would compensate the former for his services. This was agreed upon, and Judge Ostrander loaned Mr. Fee $950, the purchase price, and received $250 for his services. The money was paid by the defendant, and it received the said tax collector's deed dated August 6, 1904.

The contention of appellant, as before intimated, is that ·in consequence of its violation of said stipulation upon which plaintiff relied, defendant by its purchase of the land became the involuntary trustee of the same for the benefit of plaintiff, and that the said purchase should be considered as though made expressly for her benefit.

The particular section of the Civil Code embodying the doctrine of appellant's position is 2224, providing that "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other unlawful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." The only one of these grounds upon which with any kind of plausibility plaintiff can base her claim for relief is the one relating to fraud.

The different phases of recognized fraud have been considered so often that we deem it inadvisable at any length to discuss the subject in the abstract. It is sufficient to say that, if it be anything condemned by the law, the act of defendant in said purchase constituted constructive fraud described in section 1573 of the Civil Code, subdivision 1, as

consisting "In any breach of duty which without any actual fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him."

In 1 Pomeroy's Equity Jurisprudence, section 155, the author, with his usual clearness, states the intent and purpose of the rule as follows: "Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. . . . If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

The question then arises whether, by failing to redeem and by purchasing the property, defendant acted inequitably, in an unconscientious manner, to the prejudice of plaintiff, so that she is considered in equity the beneficial owner.

An affirmative answer, it is conceded, requires that these propositions be established: 1. That the making of the stipulation by F. A. Fee was authorized by the defendant, the San Jose Safe Deposit Bank of Savings; 2. That plaintiff relied upon said stipulation; 3. That neither plaintiff nor her agent or attorney ever received any notice that the stipulation had been disavowed or repudiated by the defendant; 4. That the plaintiff was misled by said stipulation and damaged by its violation on the part of defendant.

As to the first of these propositions we cannot resist the conclusion that Mr. Fee was authorized by the bank to enter into the stipulation, and that the finding to the contrary is therefore unsupported by the evidence. His authority did not follow from his general retainer as attorney within the purview of section 283 of the Code of Civil Procedure, but he was specially empowered to enter into the stipulation and deal with the matter according to his own judgment. Octo-

ber 24, 1903, Mr. Fee wrote to Mr. McLaughlin, the president and general manager of the bank, among other things, as follows: "I think this property should be redeemed as it is not at all unlikely that some one here may apply to the Controller to have the same offered for sale. . . . If you think it wise I might see Judge Harris, counsel for the Dworacks, and have a stipulation with him that this property be redeemed, the party redeeming to have a lien for the redemption money. Whatever you desire done at this end of the line I will of course attend to. I think, however, that you will agree with me that a redemption of the property should be at once effected."

On October 29th Mr. McLaughlin replied saying: "We agree with you that the property should be redeemed; make out it will cost about $173. . . . As to seeing Judge Harris, you are the best to decide that. . . . We send you a check for $175 to deal with the redemption as you think best. Take no chances. We place the whole matter in your hands and appreciate your efforts. Any further costs please advise and we will remit."

After receiving that letter Mr. Fee wrote to Judge Harris. the attorney for the defendants in the said case of *San Jose Safe Deposit Bank of Savings* v. *Bank of Madera et al.,* and who was the attorney in fact of Annie E. Teich. In that letter Mr. Fee says: "My client is desirous of paying any taxes it should pay by reason of its mortgage interest in said property, if it should ultimately be determined that it was such. . . . We are desirous of paying and discharging the taxes on the property, and herewith enclose a stipulation, which I think will be found agreeable to you. . . . I think you fully appreciate the fact that the taxes should be paid on this property, and as the stipulation is fair to both sides, I hope you will see your way clear to sign the same as my people are desirous of paying whatever they may be legally obliged to pay in the matter."

We do not see how more apt words could have been chosen to authorize Mr. Fee to stipulate as to the redemption of the property. He concluded that to protect the interest of his client it would be best to enter into the stipulation, and he so informed the bank. What is the meaning of the reply:

"As to seeing Judge Harris you are the best to decide that. . . . We place the whole matter in your hands"?

We may not fully appreciate, of course, the significance of the language used, but it seems to us that any man of ordinary understanding would be justified in reaching the conclusion, as Mr. Fee did, that he was authorized to stipulate as to the redemption of the property. No particular formula of words was required to confer authority, and it appears as clear as noonday that the matter was left to the discretion of Mr. Fee in whom, as is shown by the correspondence, the bank had implicit confidence.

Again, the court has found that plaintiff did not rely upon said stipulation. We cannot so read the evidence. Judge Harris testified that he did rely upon it, and we think he was amply justified in doing so. It is true that he had also the additional assurance of the tax collector that he would inform him as to any sale of the property, but the tax collector failed to do so. But the promise of the latter could in no wise affect the significance or potency of the stipulation, or in a legal sense derogate from the confidence to which it was entitled from Judge Harris. The law does not require that he should have relied exclusively upon the stipulation to avail himself of the remedy sought in this action. If so, in case A had confidence in B and C and relied upon their several promises, and both misled him to his disadvantage, he could recover against neither, which is not only inequitable but absurd.

We think the stipulation justified Judge Harris in believing that the defendant, for its own protection, desired to redeem the property; that this was its purpose in order that it should not lose the fruits of its victory in case it finally prevailed in the establishment and foreclosure of its equitable mortgage; that it was willing to agree to so redeem in consideration of plaintiff's permission for it to do so and of her promise to refund to defendant whatever might be found due according to the final decision in the foreclosure suit, and that he could safely rely upon defendant's fulfillment of its covenants, and rest in the assurance that no loss could come to plaintiff through the voluntary act of defendant.

We do not understand that under the stipulation defendant had merely an option to redeem. The language used indi-

cated its desire and intention to redeem, and besides, if it considered that it had any choice, it was its duty, when it changed its purpose, to notify plaintiff in order that she might protect herself.

As to the third proposition, it is found by the court that neither plaintiff nor her attorney received any notice that the stipulation had been repudiated or disavowed by the defendant. This finding is in favor of appellant, and, not being assailed, is, of course, not subject to review.

That the plaintiff was misled by the stipulation and damaged by the act of defendant in failing to keep its agreement has sufficiently appeared in the foregoing. If plaintiff had not understood that the property would be redeemed by defendant, it seems hard to believe that she would have allowed it to be sold, although it must be conceded that she and her predecessors temerariously permitted the taxes to go by default for many years, and thereby manifested no small degree of indifference as to the legal title to the property.

Looking at the record as it is presented, we think it would be inequitable to uphold the judgment of the lower court and would be establishing a dangerous precedent.

It is true, no doubt, that the "forum of conscience" is a somewhat variable quantity, affected more or less by the personal equation, and the moral considerations to which equity so constantly looks are in a sense conventional and cannot be defined with mathematical precision, and, therefore, in cases like this, the determination of the question whether a particular transaction is unconscionable and indefensible is not governed entirely by hard-and-fast rules, but is committed largely to the enlightened conscience of the individual chancellor, subject, however, to the revisionary action of the appellate tribunal.

We are brought somewhat reluctantly to a conclusion different from that reached in the court below, as upon the assumption that the proofs, if received, would support defendant's special defense of an equitable mortgage growing out of the loan by it of nearly $4,000, to effect the redemption of the property from a foreclosure sale to one Return Roberts, a former mortgagee, plaintiff, in order to prevail, should be required to do more than she has offered to do.

However, the court declined to receive evidence or to make any finding as to said defense, and its action in that respect obviously cannot be corrected on this appeal.

It makes no difference that the mortgage is subject to the statute of limitations. Under the familiar principle that he who seeks equity must do equity plaintiff is not entitled to have a conveyance of the property until she has refunded to defendant all that it has paid out in good faith to protect the property, including the amount loaned to Mary A. Dworack to redeem from the foreclosure sale. It might be otherwise if plaintiff were an innocent purchaser for value without notice, but, assuming the allegations of the answer to be true, any other view we consider intolerable in a court of equity. But this consideration must be relegated to another trial.

The judgment is reversed.

Hart, J., and Chipman, P. J., concurred.