[Civ. No. 3607.   Fourth Dist.   Aug. 6, 1946.]

GEORGE RANKIN et al., Respondents, v. GEORGE SATIR, Appellant.

Clarence B. Smith and William H. Wylie for Appellant.

S. P. Williams and A. C. Finney for Respondents.

BARNARD, P. J.—This is an action to establish a trust in connection with certain real property.

The plaintiffs were the owners of 350 acres of land in Imperial County, subject to a first trust deed in favor of the Federal Land Bank, to a second trust deed in favor of Frank B. Johnson, and to a third trust deed in favor of El Centro Production Credit Association. On March 15, 1940, the plaintiffs, in writing, leased this land to the defendant for a period of two years, beginning July 1, 1940, and ending July 1, 1942. As an inducement to obtain this lease, the defendant agreed to protect the plaintiffs for the term of the lease against any foreclosure of the first deed of trust. The defendant was informed of the amount due under that deed of trust and of the fact that payments were in default. Nothing was said between the parties about the second or third deeds of trust. The plaintiffs were to receive as rent one-fourth of the value of crops produced during the lease, and it was arranged that this rental should be paid to the Federal Land Bank to apply on the first trust deed.

The defendant took possession of the land on July 1, 1940, and planted a crop of flax. On August 24, 1940, the land was sold at trustee's sale under the third trust deed and was bought in by the credit association. On May 14, 1941, the land was sold under the second trust deed to Frank B. Johnson, the holder thereof. Neither of these purchasers attempted to interfere with the defendant's possession of the premises, and the credit association notified him that it would recognize his lease. In June, 1941, the defendant harvested his crop of flax and one-fourth of the proceeds therefrom was paid to the Federal Land Bank, in accordance with the agreement. In November, 1941, the defendant planted a second crop of flax, producing a crop worth $12,000 which he harvested in June, 1942.

In the meantime, on April 9, 1942, the land was sold under foreclosure proceedings brought under the first trust deed,

the defendant, being the only bidder, purchasing it for $10,062.72. Shortly before the sale the defendant assured the plaintiff George Rankin that he need not worry about losing the property, and that he (the defendant) would take care of the matter in accordance with his agreement. About two weeks after the sale the plaintiffs, having raised $12,500, asked to have the land conveyed to them, offering to pay the amount paid out by the defendant and offering to give him $200 for his trouble. The defendant replied that "he didn't want no pay for his trouble, all he wanted was his money back," and agreed to meet them at another time and place for that purpose. Instead of keeping this appointment he consulted an attorney and then refused to make a conveyance. This action was filed on August 7, 1942, and prior to the trial the plaintiffs had secured quitclaim deeds from the Production Credit Association and from Johnson.

The court found in all respects in favor of the plaintiffs finding, among other things, that as a part of the consideration for the lease the defendant had agreed to protect the plaintiffs from loss of their property through foreclosure of the first deed of trust, during the period of the lease; that he agreed to furnish the necessary money and take title to the property in his name, holding it as security until plaintiffs could repay the same, with interest, and that he would then reconvey the property to the plaintiffs; that he later assured the plaintiffs to the same effect, stating that he would purchase the property at the foreclosure sale and hold it as security for the money he furnished; that in reliance thereon the plaintiffs ceased to make any effort to find the money elsewhere with which to protect themselves against the loss of the property by foreclosure of said trust deed; that up to the time of the foreclosure sale the defendant misled the plaintiffs and thus prevented them from bidding in the property; that these promises and representations were made by the defendant without any intention of performing them, and for the purpose of securing the land for himself; that this land, during all of this time, was worth $32,000; and that the defendant purchased this land for the plaintiffs and now holds the same in trust for their benefit. An interlocutory judgment was entered decreeing that the defendant holds title to this propery in trust for the plaintiffs and not otherwise, and that the plaintiffs are owners of the property in fee, subject to their reimbursing the defendant for money

694

expended by him in purchasing the property at the sale under the first deed of trust, with interest; requiring the defendant to convey the property to the plaintiffs upon payment of the amounts due to him; and providing for an accounting between the parties, including a determination of the amounts of rental properly due to the plaintiffs. From this judgment the defendant has appealed.

The appellant first contends that the findings to the effect that he agreed to protect the respondents for the period of the lease against a foreclosure of this first trust deed; that he agreed to advance the money, buy in the property at this foreclosure sale, and hold it for the respondents, giving them an opportunity to repay him; that by his promises he misled the respondents with the result that they made no effort to secure the money elsewhere; and that he holds the property in trust for the benefit of the respondents, are not supported by the evidence. This contention is without merit. The essential findings are fully supported by the respondents' testimony, which was believed by the court. Moreover, that testimony is somewhat confirmed by the appellant's own testimony of what occurred when he was approached by the respondents shortly after the foreclosure sale. He confirmed the respondents' testimony as to the conversation at that time, and he admitted that when they then asked him for a conveyance he had said nothing to indicate any claim on his part that he was not obligated to reconvey the property. He testified that at that time he did not know, in his own mind, what he was going to do about the matter, and that he promised to meet the respondents later in order to get away from them and without any intention of keeping the appointment.

It is next contended that the facts here established lack some of the elements essential to a "resulting" trust. Particularly, it is argued that a resulting trust cannot rest upon an express oral agreement; that any oral agreement here was not sufficiently contemporaneous with the conveyance of the legal title to the alleged trustee; and that there was no showing here of such a confidential relationship between the parties as is required for a resulting trust.

Assuming that some facts essential to a resulting trust, as that term is usually applied, are here lacking, the facts are clearly sufficient, under long recognized rules, to establish that form of constructive trust which rests upon fraud or wrongdoing. There is a difference between these two forms of trust (*Scadden Flat G. M. Co.* v. *Scadden*, 121 Cal. 33

[53 P. 440]). ■ Constructive trusts of this form are not based primarily on the intention of the parties but are forced on the conscience of the trustee by equitable construction and the operation of law. (*Millard* v. *Hathaway*, 27 Cal. 119.) ■ In such trusts, based upon fraud or wrongdoing, an oral promise is sufficient and the existence or absence of a confidential relationship between the parties, in the strict sense, is not controlling. (*Brison* v. *Brison*, 75 Cal. 525 [17 P. 689, 7 Am.St.Rep. 189].) "Such trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit or other variety of fraud actual or constructive." (*Sanguinetti* v. *Rossen*, 12 Cal.App. 623 [107 P. 560].) ■ In order to create a constructive or involuntary trust, as defined in section 2224 of the Civil Code, no conditions other than those stated in that section are necessary. (*Lauricella* v. *Lauricella*, 161 Cal. 61 [118 P. 430].) By section 2223 of that code the rule of constructive trust is extended to the case where one person wrongfully detains a thing from another. ■ The rule extends to almost any case where there is a wrongful acquisition or detention of property to which another is entitled, since it is based upon the equitable principle that no one may take advantage of his own wrong. (Civ. Code, § 3517.) As was said in *Brazil* v. *Silva*, 181 Cal. 490 [185 P. 174], "The instances of its application are as various nearly as the ways in which property can be wrongfully acquired."

These rules, as codified in sections 2223 and 2224 of the Civil Code, and as establishing constructive trusts, have been applied in many cases where property has been wrongfully acquired, in violation of the just rights of another, through buying in the property at judicial sales, foreclosure sales, tax sales, and the like. (*Lucas* v. *Associacao Protectora etc. Da Cal.*, 61 Cal.App.2d 344 [143 P.2d 53]; *Dowd* v. *Glenn*, 54 Cal.App.2d 748 [129 P.2d 964]; *Teich* v. *San Jose etc. Bank*, 8 Cal.App. 397 [97 P. 167]; *Jenkins* v. *Frink*, 30 Cal. 586 [89 Am.Dec. 134]; *Price* v. *Reeves*, 38 Cal. 457.) In *Neet* v. *Holmes*, 25 Cal.2d 447 [154 P.2d 854], it was held that a promise to locate adjoining claims for the benefit of the lessors, made as an inducement to obtain a lease, if broken, is sufficient to constitute the lessees trustees for the benefit of the lessors. While the facts in these cases vary somewhat from each other and from the facts in the instant case, the principles there applied are applicable and controlling here. The

facts as here found are sufficient to establish a constructive trust and to support the judgment rendered.

■ The appellant makes the further contention that he was relieved from complying with any promise or agreement he made, because the foreclosure sale under the third trust deed on August 24, 1940, terminated the relationship of landlord and tenant between him and the respondents, and thereby terminated any agreement on his part to protect the respondents from a foreclosure sale under the first trust deed "during the period of such lease." It is a general rule that while still holding possession under a lease a tenant may not attack a landlord's title. Whether or not this is applicable here, the appellant continued in possession under his lease after the purported sale under the third trust deed, and the Production Credit Association, the purchaser at that sale, notified him that it would recognize the lease. This purchaser made no attempt to interfere with the appellant in any way and he proceeded under his lease for nearly two years thereafter. The reason the Production Credit Association made no attempt to take possession of the property is apparent, since it must have recognized that its claim was subservient to that of the Federal Land Bank, which held the first trust deed. While the appellant was still thus in possession of the property as a tenant the event occurred, a foreclosure sale under the first trust deed, which the respondents had feared and from which the appellant had agreed to protect them. There was nothing in the foreclosure sale under the third trust deed, which in fact merely clouded the legal title, which would in any way relieve the appellant from the duty to keep and perform his promise and agreement in this regard. Any possible legal complication was later removed by the quitclaim deeds acquired by the respondents. No reversible error appears in this connection.

The judgment appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied August 28, 1946, and appellant's petition for a hearing by the Supreme Court was denied October 1, 1946.