[Civ. No. 20612. Second Dist., Div. One. Apr. 27 1955.]

FRANCES ESTRADA, Respondent, v. PHILLIP GARCIA, Appellant.

Theodore E. Bowen and William Mayhew for Appellant.

David C. Marcus for Respondent.

WHITE, P. J.—This is an appeal by defendant from a judgment that plaintiff is the beneficial owner of an undivided one-half interest in certain real property, the record legal title of which stands wholly in the name of defendant, and ordering that the latter convey an undivided one-half interest therein to plaintiff.

The complaint contains two causes of action, the first of which seeks to impress a trust in favor of plaintiff upon the property in question, while the second prays for a judicial declaration determining the rights of the respective parties under an oral agreement and contract pleaded in the first cause of action and concerning the property here in question.

In his answer defendant generally denied the allegations of plaintiff's complaint and also set up separate defenses that the complaint did not state a cause of action; that the contract and agreement as set forth in the complaint was oral and therefore in violation of the statute of frauds; that the defendant received no consideration for the oral agreement and contract alleged in the complaint, and that the plaintiff was guilty of laches and undue delay in filing her complaint.

The defendant filed a cross-complaint to quiet his title to said real property, and asked for a restitution of possession of the premises and damages for the withholding of possession, together with reasonable rent.

An answer to the cross-complaint was filed by plaintiff denying in substance the allegations of the cross-complaint and reasserting her claim to the real property as set forth in her complaint.

Trial before the court resulted in a judgment as aforesaid, from which defendant prosecutes this appeal.

As to the factual background surrounding this litigation, the record discloses the following to be a fair epitome of the testimony adduced at the trial.

Called as a witness under section 2055 of the Code of Civil Procedure, defendant testified that he first became acquainted with plaintiff during the early part of 1947 at Los Angeles and that he kept company with her "on and off" from 1947 to 1951; that he kept company with her during the entire year of 1947, approximately six months in 1948, about nine months in 1949, eight months during the year 1950, and until March of 1951. That during the years 1947, 1948, 1949 and 1950 he had sexual relations with plaintiff. That in June, 1950 they became engaged to be married and at that time he told her that he "was going to buy her a G.I. home since I am a veteran and I am entitled to that, so we are going to move away from that district there and I was going to buy her a home for her and the baby and for all the family."

The defendant further admitted that when plaintiff became pregnant she told him that he was the father and that the baby was named "Johnnie" Garcia. The child was born August 20, 1948, and during this period of time he was going with the plaintiff. The defendant denied he was living on the premises where the plaintiff resided, but admitted that he came to the home most every day. The defendant stated he was going to buy her a G.I. home where she and the whole family could live; that they had been to visit several places at Compton during 1948 and 1949; that he had taken her to view different parcels of property after the child was born. "The kid was about 18 months old; the kid was born in 1948 and I purchased the property in 1950." The following testimony appears in the record:

"Q. By Mr. MARCUS (attorney for plaintiff): And you knew the child? A. Yes, I know him as Johnnie Garcia.

"Q. And you knew that she had stated to you that the child was yours? A. Yes, she did.

"Q. Do you remember when you moved her into premises with the baby? A. November 1950.

"Q. That was shortly after the property was purchased? A. Yes."

The defendant was shown the deed and escrow papers and admitted that he had received them; that the documents indicated that they were addressed to Phillip Garcia, 450 West 83d Street, Los Angeles, California, which are the premises in litigation, although he denied that he lived there. He admitted he had directed the deed be mailed to him at the address of the premises. He admitted keeping his working clothes on the premises but denied ever sleeping there. He

stated he placed the deed and papers in the rear house but since November or December of 1950 he had not seen them.

With reference to his intention to marry plaintiff the defendant testified:

"Q. You never talked to her about getting married? A. Yes, but it was going to be in June.

"Q. June? A. June of 1951."

With reference to the deed to the property here in question, defendant testified that plaintiff was "saving the documents until (they) were married." That in March, 1951 he terminated his engagement to marry plaintiff and on June 30, 1952, was married to another woman. That he made no payments for the support of the child.

As a witness in her own behalf, plaintiff testified substantially, as did defendant, concerning their relations with each other up to the time of the termination thereof. That she became pregnant with child from defendant in December, 1947, and the child was born August 20, 1948. That she continued to have sexual relations with defendant and that he purchased clothing, a crib, highchair and a play pen for the child. That defendant stated to her "he was going to buy me a home and right after that we were to be married and the house was to be mine." That on several occasions they went to look for a home in the Compton area. That when he purchased the house here in issue he told her, "Honey, this is the home. This is your home. This is what you wanted, a three bedroom house." He stated "the house was mine."

On September 17, 1950, the date of her birthday, he gave her a ring at their engagement party. Then they started to look for a home. She went to see the house before they moved into it. After she moved into the house he handed her the deed and said, *"This is yours" and he said he was not to give support for the child but the house was the means for the support of the child "and I could stay there all the time."* On that occasion *"he gave me all the papers. I had them all; the house deed, the insurance,"* and the escrow papers. (Emphasis added.)

That at that time he was living with her on the premises. At the time he handed her the deed he stated *"That the house was mine and that he could not give me any support for the child because he had to pay for the payments on the house."* (Emphasis added.)

She testified that she and the defendant occupied the front

bedroom and he continued to live there until March of 1951. At that time they had an argument, and "he just said he was through and he wanted the engagement ring back, and I gave it back to him." He then moved from the premises. He continued to make the payments on the house. He gave her no money for the support of the child. She was employed and continued to work and support the child. In November of 1952 he returned to the house, played with the baby and handed her a paper.

Plaintiff further testified that she was employed continuously for the preceding three years and had supported herself and the child.

On cross-examination plaintiff admitted she did not know she had any claim on the property until after service upon her of a notice to quit the premises, and when she consulted with a lawyer. That on August 25, 1952, before receiving the notice to quit she wrote a letter to defendant wherein she made no claim of any interest in the property, but stated, "So I'm doing my packing so I can find a house. So as soon as I get out I let you no. So I thank you very much for everything."

Called as a witness in his own behalf, defendant contradicted most of the testimony given by plaintiff with reference to the acquisition of the property. He denied any conversation with her concerning the purchase of the property in question, and particularly denied that he had ever delivered the deed or escrow papers to her. In this regard he testified as follows:

"Q. Is it not a fact that when the deeds arrived at the house at 450 West 83rd Street you were there? A. Yes, I was there working.

"Q. And you received this deed and the other documents, now marked Exhibit 2? A. Yes.

"Q. At that time did you hand those papers and the deed to your intended wife, the plaintiff in this action? A. No, I didn't.

"Q. Did you take the papers with you? A. No, I took them to the back house. The back house was furnished, and I left them there.

"Q. At that time did you tell her, 'Here is the property and the deed to the premises; I am giving them to you for the baby and yourself?' A. No, I didn't.

"Q. This document has been in her possession, has it not, ever since the date it was sent through the mails until the

hearing in the Municipal Court case? A. No, it hasn't. It was in the back house."

The evidence reflects that the property in question was purchased for the sum of $8,900, with $3,500 as a down payment and deferred payments of $55 per month. It is unquestioned that the money involved in the purchase and monthly payments belonged to defendant who was earning about $66 per week gross, with a weekly "take home" of approximately $49. At the time defendant first met plaintiff she was working as a seamstress earning from $60 to $70 per week, out of which she was supporting herself and her three children.

Dora Dominguez, generally corroborated the testimony of plaintiff as to her keeping company with defendant from 1947 to 1951; the birth of the child and defendant sleeping on the premises, the engagement of plaintiff to defendant, termination of the engagement and the returning of the engagement ring. The witness testified that on numerous occasions she heard defendant state to plaintiff, "Now, we are happy here. We have got a home. And this home is yours. He always did say that in front of us all the time." Interrogated by the court as to these conversations with defendant concerning the house, the witness replied, "Well he always did say that in front of us, that the house was for Frances, that he had bought it for her. He told us a lot of times."

Based on the foregoing testimony the court made findings here under attack, as follows:

"II

"The court finds that for a period of years, embracing a considerable time before the birth of said child and a few years thereafter, the plaintiff and defendant lived and resided together as husband and wife, although not living together in the same household continuously, and that the plaintiff and defendant orally agreed, while participating in said relationship, that they would be married and would purchase the property hereinafter described, said property to be their home, and that said property would belong to both of said parties, it being further agreed that the defendant would make all monthly payments when due on the property, pay the taxes, upkeep and maintenance thereon, and that the plaintiff and minor child would reside thereon and have possession thereof, and that the defendant, to whatever extent he might choose to abide on the place, would have possession jointly with the plaintiff and said child, it being further agreed between the parties that the payments on the purchase

price and for the upkeep and maintenance of said property, together with payments for taxes, would constitute defendant's contribution toward the support of said child; that the defendant would not be required to make any separate or other payments for said child, and that all of the remainder of the cost of caring for said child would be borne by the plaintiff, who was throughout nearly all the times herein mentioned gainfully employed.''

"III

"The court further finds that said property was purchased by the defendant pursuant to said agreement and that, without the knowledge or consent of plaintiff, title to said property was taken by defendant in his own name only.''

"VI

"The court finds that on or about the 1st day of December, 1950, the defendant delivered to the plaintiff the grant deed that he had received to said property, pretending in so doing, and with the intent of causing her to believe, that the title to said property was vested in her. That the plaintiff was not proficient in reading the English language and had no understanding concerning the delivery of title to said property to defendant or to her, and believed at the time the defendant delivered said original deed to her that the title had been vested in her name and that she was the owner of a half interest therein; that she had no knowledge concerning the necessity for the execution of any further deed or document in order to convey such an interest to her; that she accepted the said document in good faith and belief upon her confidence in the honesty of the defendant in so delivering said deed to her and upon his representations that she was the owner of an interest in said real property.''

"VIII

"The court further finds that because of said oral agreement and the said representation made to plaintiff by defendant and because of her reliance on said agreement and said representations, the plaintiff, Frances Estrada, has maintained and supported said minor child since his birth, and does now continue to support and maintain him, all at her own expense and by her own gainful employment, without having made any demand upon the defendant for any contribution toward such support, except only that he perform the obligations undertaken by him in said oral agreement.''

The sole ground urged by appellant for reversal of the judgment is that the foregoing findings are not sustained by the evidence. He concedes that in an appeal on the ground here urged the evidence must be considered most strongly in favor of the prevailing party. That an appellate tribunal will not attempt to weigh the evidence and that our duty begins and ends with a determination of whether there is in the record evidence of sufficient substantiality, contradicted or uncontradicted, to support the conclusion reached in the trial court, and that it must be made clearly to appear that upon no reasonable hypothesis whatever is there sufficient substantial evidence to sustain that conclusion.

However, appellant insists that viewed in the light of the foregoing rules, the facts here established lack some of the elements essential to impress a trust upon the real property involved, purchased by appellant with his own funds and standing in his own name. It is first contended that the agreement being an oral one, the transfer of the real property thereunder is forbidden by the statute of frauds (Civ. Code, §§ 1091, 1624, 852; Code Civ. Proc., § 1973). ■ But here, the constructive trust rests upon fraud or wrongdoing, and trusts of this nature are not primarily based on the intention of the parties, but by equitable principles and operation of law are forced on the conscience of the trustee. In the creation of a constructive or involuntary trust, as defined by section 2224 of the Civil Code, the only conditions necessary are those stated in that section. Conceding that some facts essential to a resulting trust, as that term is usually applied, are lacking in the case at bar, the facts shown in the record before us are amply sufficient, under long recognized equitable principles, to establish that form of constructive trust based upon fraud or wrongdoing. Founded on the principle that no one may take advantage of his own wrong, the rule just enunciated extends to practically any case where there is a wrongful acquisition or detention of property to which another is entitled (*Rankin* v. *Satir*, 75 Cal.App.2d 691, 694 695 [171 P.2d 78]; Civ. Code, §§ 2217, 2223, 2224; *Blair* v. *Mahon*, 104 Cal.App.2d 44, 49, 50 [230 P.2d 832]; *West* v. *Stainback*, 108 Cal.App.2d 806, 809, 810 [240 P.2d 366]). ■ And, the fact that the parties hereto were living in an unlawful relation did not affect the validity of the trust since such immoral relation was not made a consideration and in no way affected the relative rights of the parties to the contract. ■ Here, the evidence clearly shows that the promise to purchase the

property by appellant for respondent was made in contemplation of marriage and in further consideration that appellant be relieved, which he was, of his obligation to support his child (*Trutalli* v. *Meraviglia,* 215 Cal. 698, 700, 701 [12 P.2d 430]). On the facts shown in the record before us it would be unconscionable for a court of equity to refuse relief to respondent. While it is true, as claimed by appellant, none of respondent's money at the time of purchase went into the purchase price, there is evidence that a part of the consideration for appellant's promise was, as heretofore pointed out, the assumption by her of appellant's bounden duty to support their child.

Appellant's challenge to the sufficiency of the evidence to support the findings heretofore set forth is answered by what we have herein set forth based upon a review of the evidence. Appellant earnestly insists that the finding that he purchased the property pursuant to an oral agreement is totally bereft of evidence to sustain it. Without here repeating the evidence, suffice it to say that the preceding factual narrative contains much evidence to reasonably warrant the inference that the property was purchased by appellant pursuant to an oral agreement with respondent that they would be married; that the property would be their home, and belong to both of them. That appellant would make all monthly payments on the property, pay the taxes and upkeep, and that respondent's contribution toward the purchase of the property was her agreement to assume sole responsibility for the cost of caring for the child. That when the property was purchased, appellant delivered to respondent the deed thereto, who, relying upon her confidence in appellant's honesty and being deficient in reading or understanding the English language, accepted the deed in good faith and upon appellant's representation that she was the owner of an interest in the real property. We are satisfied that the evidence supports the findings and that the judgment is supported by the findings.

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied May 23, 1955, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1955.