[Civ. No. 66749. Second Dist., Div. Seven. July 21, 1983.]

EDWARD L. MARTIN, Plaintiff and Respondent, v.
PATRICIA A. KEHL, Defendant and Appellant.

COUNSEL

Novak, Cooper & Wohlgemuth and Mark S. Gottlieb for Defendant and Appellant.

Michael H. Ehrlich for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—Defendant Patricia Kehl appeals from the judgment declaring her a constructive trustee for plaintiff Edward Martin of one-half the real property located at 5917 Alonzo Avenue, Encino.

Prior to March 21, 1973, plaintiff, defendant, and Donald Gillingham (the defendant's boyfriend and her husband as of 1977) made an oral agreement that plaintiff and Gillingham would purchase the property, each becoming a 50 percent owner thereof, but that record title would be put in the name of defendant who needed a place to live. As provided for by the agreement, plaintiff and Gillingham each contributed $900 to cover the required down payment and the balance of the purchase price was secured by a purchase money first trust deed loan. The agreement further provided that so long as defendant occupied the property, in lieu of rent, she would pay the monthly trust deed payments and would take care of minor maintenance; but if and when she vacated the property, it would be sold and plaintiff would receive one-half of the net proceeds.

Following close of escrow and recording of title in her name, defendant occupied the property. In October 1973, shortly after close of escrow, plain-

tiff tendered to defendant a grant deed which she never executed. She lived continuously in the house until May 1978, when she vacated the premises and rented it for the rest of the year to tenants who, as their rent, paid the bank payments as well as the water and power bills. In June 1978 plaintiff wrote defendant demanding that the property be sold or he be paid his equity share. Defendant failed to comply. Then, in October 1978, plaintiff filed a complaint asking for dissolution and accounting of the alleged partnership formed by the oral agreement, a constructive trust on one-half the property, and for "[s]uch other and further relief as the Court may deem just and proper."

In her answer defendant denied there was any agreement for plaintiff to own one-half the property and alleged as affirmative defenses the action was barred by the statute of limitations, laches, and the statute of frauds.

At trial it was undisputed that plaintiff provided one-half of the cash down payment and the remainder of the financing was obtained through a purchase money trust deed loan. Plaintiff testified to the previously recited terms of the oral agreement whereby he would have a one-half ownership but title would be placed in defendant's name in order to obtain the maximum loan. This testimony was corroborated by the seller of the property. Plaintiff further testified that they had never verbally agreed that defendant would have to sign a deed. He said he considered she rejected the terms of the agreement when she moved out of the house, not when she failed to sign the deed in 1973. Defendant admitted that plaintiff paid one-half of the down payment to the escrow company but claimed he lent her the $900 with the understanding that she would pay him back the money whenever she sold the house with whatever "bonus" she decided to give him.

Following the trial court's announcement of intended decision in favor of plaintiff, plaintiff prepared proposed findings. Defendant objected to them and filed a request for a special finding that she and defendant "never entered into a partnership or fiduciary relationship between themselves." The court then prepared and signed the findings of fact and conclusions of law. There was no mention of a partnership or fiduciary relationship in any of the findings.

In the findings of fact and conclusions of law the court found an oral agreement and recited the previously mentioned material terms. The court further found that "defendant was not required to deed plaintiff's one-half interest in said property to him so long as defendant occupied the property;" and "the oral agreement did not require defendant to sign the grant deed

. . . which plaintiff tendered to defendant in October, 1973, as defendant was still occupying the property at that time." The court concluded that the statute of limitations did not bar the cause of action because it did not accrue until defendant vacated the property in May 1978. The court imposed a constructive trust in favor of plaintiff of a one-half undivided interest in the real property and specified the amount that should be paid as reimbursement to each of the parties prior to plaintiff receiving his 50 percent of the proceeds of the sale. This appeal followed entry of judgment.

## CONTENTS

Defendant contends that (1) the court erred in imposing a constructive trust because, without a finding of a fiduciary relationship, the oral agreement was unenforceable under the statute of frauds; (2) the cause of action is barred by the statute of limitations and laches; (3) the judgment must be reversed for failure to join an indispensable party; and (4) in any event, plaintiff should not have been awarded a one-half interest. Plaintiff controverts all the contentions.

## SUMMARY

The trial court could impose a constructive trust herein to prevent unjust enrichment without a finding of a fiduciary relationship. And, in any event, this is a classic case for imposition of a resulting trust. The cause of action is not barred by the statute of limitations or laches. Defendant has waived any objection of failure to join an indispensable party. Moreover, the court properly awarded plaintiff a one-half interest in the property. Accordingly, the judgment will be affirmed.

## A CONSTRUCTIVE TRUST IS PROPER WITHOUT A FINDING OF A FIDUCIARY RELATIONSHIP IN ORDER TO PREVENT UNJUST ENRICHMENT

■ Defendant contends that the imposition of a constructive trust was improper in view of the lack of an express finding of the existence of a partnership, despite her request for a special finding on that issue. While we agree with defendant that under the mandate of former Code of Civil Procedure section 634, we cannot infer in plaintiff's favor a finding of a partnership or other fiduciary relationship (*Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 46 [130 Cal.Rptr. 446]; *City of National City* v. *California Water & Tel. Co.* (1962) 204 Cal.App.2d 540, 545 [22 Cal.Rptr. 560]), the judgment can still be upheld on the basis of the findings that were made, which are supported by the evidence.

The trial court possessed broad equitable powers to fashion a remedy which would prevent defendant from being unjustly enriched at plaintiff's expense. ■ "A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled . . . ." (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373 [140 Cal.Rptr. 744]; see 5 Scott on Trusts (3d ed. 1967) § 462, p. 3413.)

■ Defendant, however, argues that in the absence of a finding of a fiduciary relationship or fraud, her failure to perform the oral agreement to convey real property here cannot give rise to a constructive trust and the agreement is unenforceable under the statute of frauds. Defendant's reliance on *Mazzera* v. *Wolf* (1947) 30 Cal.2d 531, 537 [183 P.2d 649], is misplaced. It is true that where one party merely orally promises to buy land for another and thereafter buys it for himself *with his own money* there is no basis for a constructive trust. (*Ibid.*; *Elliott* v. *Wood* (1949) 94 Cal.App.2d 314, 317 [212 P.2d 906]; *Bradley* v. *Duty* (1946) 73 Cal.App.2d 522, 526 [166 P.2d 914].) But, here, there was far more than a mere enforceable promise that was broken. While the title was taken in defendant's name, the property was bought with plaintiff's money.

■ "The essence of the constructive trust theory is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrongdoing." (*Nevarez* v. *Nevarez* (1962) 202 Cal.App.2d 596, 602 [21 Cal.Rptr. 70].) In such a trust based upon wrongdoing, an oral promise is sufficient and the existence or absence of a confidential relationship between the parties, in the strict sense, is not controlling. (*Fowler* v. *Fowler* (1964) 227 Cal.App.2d 741, 746 [39 Cal.Rptr. 101]; *Rankin* v. *Satir* (1946) 75 Cal.App.2d 691, 695 [171 P.2d 78].)

■ The principal constructive trust situations are set forth in Civil Code sections 2223 and 2224. Section 2223 provides that "[o]ne who *wrongfully* detains a thing is an involuntary trustee thereof, for the benefit of the owner." (Italics added.) Section 2224 provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, *or other wrongful act,* is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Italics added.) The only conditions necessary to create a constructive trust are those stated in the above sections. (*Kraus* v. *Willow Park Public Golf Course, supra,* 73 Cal.App.3d 354, 373; *Estrada* v. *Garcia* (1955) 132 Cal.App.2d 545, 552 [382 P.2d 547]; *Rankin* v. *Satir, supra,* 75 Cal.App.2d at p. 695.) In order to provide the necessary flexibility to apply an equitable doctrine to individual cases, these sections state general principles for a court's guidance rather than restrictive rules.

(*Elliott* v. *Elliott* (1964) 231 Cal.App.2d 205, 211 [41 Cal.Rptr. 686].) Thus, it has been pointed out that "a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 600 [124 Cal.Rptr. 297]; *Estrada* v. *Garcia, supra,* 132 Cal.App.2d at p. 552; *Rankin* v. *Satir, supra,* 75 Cal.App.2d at p. 695.)

■ Here defendant wrongfully detained the property after she had vacated the premises. Permitting her to retain this property would result in her unjust enrichment. In order to prevent her from benefiting from her own wrongful act of refusing to convey the property interest for which plaintiff had paid, the court could appropriately utilize the remedy of a constructive trust to compel performance of the oral agreement.

## A Resulting Trust Exists

In any event, the judgment can be affirmed on the basis of a resulting trust since the express findings of the court certainly would support the imposition of such a trust.

■ The terms "constructive trust" and "resulting trust" have often been confused by attorneys, as well as some courts. (*Kraus* v. *Willow Park, supra,* 73 Cal.App.3d at p. 373; see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 704, p. 2326; 5 Scott on Trusts, *supra,* § 462.1, p. 3416.) Both are involuntary trusts implied by law and exempt from the statute of frauds. (See Civ. Code, § 852.) However, " '[a] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. . . . [¶] It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the *constructive* or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them.' " (*American Motorists Ins. Co.* v. *Cowan* (1982) 127 Cal.App.3d 875, 884-885 [179 Cal.Rptr. 747].)

■ Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another. (*Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 269 [158 P.2d 3]; *Elliott* v. *Wood, supra,* 95 Cal.App.2d 314, 317.) "The trust arises because it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired." (*Lezinsky* v. *Mason Malt W. D. Co.* (1921) 185 Cal. 240, 251 [196 P. 884]; *Laing* v. *Laubach* (1965) 233 Cal.App.2d 511, 517 [43 Cal.Rptr. 537].) Thus, Civil Code section 853 expressly provides that

"[w]hen a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

■ Although a resulting trust theory of recovery was not advanced by plaintiff in the trial court, it is settled that a change in theory is permitted on appeal when a question of law only is presented on the facts appearing in the record. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) "The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.'" (*Ibid.*) But such is not the case here. ■ Even if the facts pleaded and proved by plaintiff would not sustain the judgment on the theory of constructive trust, they are sufficient to uphold recovery under the resulting trust theory since that theory does not contemplate any factual situation different from that established by the evidence in the trial court.

Indeed, this is a classic case of a resulting trust. The precise amount or proportion of the consideration furnished by plaintiff towards the purchase price was established clearly, convincingly and unambiguously. (See *Laing* v. *Laubach, supra,* 233 Cal.App.2d 511, 517.) It was undisputed that plaintiff paid one-half of the down payment (approximately $900) and the title was taken in defendant's name. Defendant was given ample opportunity to present her version of the transaction, and the issue of whether plaintiff intended her to have the beneficial interest in the property was decided adversely to her. The trial court on ample evidence expressly rejected her claim that the money was a loan and specifically found there was an oral agreement for plaintiff's one-half ownership. Where, as here, the elements of a resulting trust are present, the fact that the transferee and payor of the purchase price made an oral agreement that the former was to hold the property in trust for the latter, which was unenforceable under the statute of frauds, does not prevent a resulting trust from arising. In fact, such an agreement supports the inference or presumption that the payor did not intend that the transferee should have the beneficial interest. ■ ■ ■ ■ (*Viner* v. *Untrecht, supra,* 26 Cal.2d 261, 270.)[1]

---

[1]In her supplementary brief defendant also asserts that a resulting trust is barred by the equitable doctrine of unclean hands in that plaintiff testified that title was taken in defendant's name in order to obtain the maximum loan available to owner-occupants but not bank employees as himself. Defendant did not mention the doctrine of clean hands in her trial brief or request a special finding on that matter. Insofar as she may have raised the issue by a cursory reference in her answer, the trial court's implicit rejection of the defense was not an abuse of discretion. Nor does the evidence warrant a different result on appeal.

"The essence of the 'clean hands' doctrine is not that the plantiff's hands are dirty but

### THE ACTION IS NOT BARRED
### BY THE STATUTE OF LIMITATIONS OR LACHES

Contrary to defendant's contention, plaintiff's cause of action for an involuntary trust was not barred by any statute of limitations or laches.

█ The statute does not commence to run until a cause of action accrues which occurs when there is a remedy available. (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230 [74 Cal.Rptr. 225, 449 P.2d 161].) █ The statute of limitations does not run on a beneficiary of a resulting trust until he has actual knowledge of repudiation or breach of trust. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 84, p. 5444.) █ Ordinarily it begins to run upon the right to enforce a constructive trust from the time the beneficiary has notice or should know of the *wrongful* holding of the property. (*Ibid.*) Where, as here, there is no claim of wrongdoing in the original placing of the title in defendant's name, the cause of action for a constructive trust does not arise until the transferee repudiates the oral promise or in some other way indicates she is holding the property adversely to the plaintiff in violation of her duty. (See *Briggs* v. *Nilson* (1964) 226 Cal.App.2d 342, 347 [38 Cal.Rptr. 68]; see also *Cohn* v. *Goodday* (1923) 191 Cal. 615, 627 [217 P.756].)

█ Substantial evidence supports the trial court's findings herein that the cause of action for an involuntary trust did not accrue until May 1978, because the oral agreement did not require her to sign the deed tendered in 1973, while she was still occupying the property. Plaintiff testified that although he tendered her a deed, they "had never verbally agreed that . . . she would have to sign a deed." He clarified a prior ambiguous answer to an interrogatory by explaining that he considered the agreement breached "[w]hen she moved out of the house," not when she failed to sign the deed. Based on this testimony the court could properly conclude that no cause of action accrued until May 1978, because plaintiff had no reason to assume

---

'that the manner of dirtying renders inequitable the assertion of such rights against the defendant.'" (*Estate of Blanco* (1978) 86 Cal.App.3d 826, 834 [150 Cal.Rptr. 645, 6 A.L.R.4th 850].) "It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief." (*Bradley Co.* v. *Bradley* (1913) 165 Cal. 237, 242 [131 P. 750].) "It is settled that the act upon which equity may refuse relief to a plaintiff because he does not come into court with clean hands must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." (*Wiley* v. *Wiley* (1943) 59 Cal.App.2d 840, 842 [139 P.2d 950].) "It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant." (*Bradley Co.* v. *Bradley, supra,* 165 Cal. at p. 242; *Estate of Blanco, supra,* 86 Cal.App.3d at p. 833.) Plaintiff's conduct herein, although wrongful with respect to his employer, did not render inequitable his obtaining relief against defendant. Defendant was fully aware that plaintiff was using this device to obtain the maximum loan and was not prejudiced by plaintiff's conduct.

defendant was keeping the property adversely to him in violation of her duty, since there was no wrongful holding or repudiation until that time.

Nor is there any merit to defendant's claim in her reply brief that the trial court's findings of fact and conclusions of law with respect to the statute of limitations are erroneous as a matter of law because they are contrary to uncontroverted admissions in the pleading. We realize that "[f]indings of fact contrary to [the] facts admitted in the pleadings must be disregarded." (*Stoneman* v. *Fritz* (1939) 34 Cal.App.2d 26, 31 [92 P.2d 1035].) But, while both plaintiff and defendant in their pleadings admitted that a deed was tendered by plaintiff to defendant in October 1973, which was never executed, this statement of fact does not require a finding that the statute of limitations began to run at that time. Although plaintiff alleged that in furtherance of an oral agreement between the parties title was taken in defendant's name and she was to convey a one-half interest at some time "thereafter," he never alleged that the agreement required that she sign the deed tendered in October 1973 at that time, or even at any particular time thereafter. Indeed, he specifically alleged that the agreement was breached in 1978 when she vacated the property and rented it to a third party without his knowledge and consent, since at that point the property was supposed to be sold.

Defendant, of course, on her part, denied that there was any agreement whatsoever to convey the property or to sign the deed.

Plaintiff's cause of action for an involuntary trust is also not barred by laches. ▆▆▆ We recognize that laches may bar relief in equity irrespective of whether the statute of limitations has run on the action at law. (See 7 Witkin, Summary of Cal. Law, *supra,* Equity, § 14, p. 5239.) But, "the affirmative defense of laches requires unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) ▆▆▆ The beneficiary of a resulting trust will not be barred from enforcing it merely because of the lapse of time if the trustee has not repudiated the trust to his knowledge. (See 5 Scott on Trusts, *supra,* § 481.1, p. 3464.) Further, the beneficiary of a constructive trust will not be barred by laches even though he knows of the circumstances giving rise to the trust where he has no reason to believe that the constructive trustee is holding the property adversely. (*Id.,* at § 481, p. 3465.) Moreover, prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain her burden of proof and the production of evidence on the issue. (*Miller* v. *Eisenhower Medical Center, supra,* 27 Cal.3d at p. 624.)

Defendant has not met her burden here. She has not shown either unreasonable delay or prejudice. The lawsuit was filed within a few months of the time when plaintiff either knew or had reason to believe that the property was being held adversely and the trust was repudiated.[2]

## ANY CLAIM OF LACK OF INDISPENSABLE PARTY WAS WAIVED

 Defendant's contention that the judgment must be reversed because of plaintiff's failure to join an indispensable party, namely, her husband Gillingham, also lacks merit. In her pleadings and at trial defendant never complained of the lack of joinder of Gillingham, whom she had married before the lawsuit ever began. Indeed, according to her own testimony, Gillingham was in Montana at the time of trial setting up a business for both of them and she planned to join him there as soon as the trial ended. It is apparent that her husband knew of the lawsuit. Moreover, his interest had not been in any way prejudiced by the lawsuit since he is not bound by the judgment and the trial court only disposed of the one-half of the property in which he could have had no interest. (*Kaus* v. *Willow Park Public Golf Course, supra,* 73 Cal.App.3d 354, 370.)

Assuming that Gillingham should be deemed an indispensable party, "the failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party the court still has the power to render a decision as to the parties before it which will stand." (*Id.,* at p. 364; *Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 44 [162 Cal.Rptr. 238].) Where, as here, "a case has been fully tried without objection to the absence of parties and the claim that the absent parties were indispensable is raised for the first time on appeal, the rule's underlying policy considerations of avoiding piecemeal litigation and multiplicity of suits [citations] are of little consequence inasmuch as the judicial and litigant resources necessary to the litigation have already been expended." (*King* v. *King* (1971) 22 Cal.App.3d 319, 326 [99 Cal.Rptr. 200]; *Ferraro* v. *Southern Cal. Gas Co., supra,* 102 Cal.App.3d at p. 45; *Kraus* v. *Willow Park Public Golf Course, supra,* 73 Cal.App.3d at p. 369.) Thus, defendant may not raise the failure of plaintiff to join her husband Gillingham for the first time on appeal.

## A ONE-HALF INTEREST WAS PROPERLY AWARDED PLAINTIFF

 Defendant further argues that even if the court could impose an involuntary trust, plaintiff is not entitled to a one-half interest. The trial

---

[2]*Hamud* v. *Hawthorne* (1959) 52 Cal.2d 78 [338 P.2d 387], cited by defendant, is inapposite. In *Hamud,* unlike here, the plaintiff received fair value for consenting to defendant's possession and only sued years later after the value had increased because an oil company had expressed interest in it.

court awarded plaintiff one-half the net proceeds from the sale of the property after reimbursement to defendant of $16,861.54 for major repairs and maintenance ($9,907.54), utility bills ($310), and bank payments ($5,744), from the time the tenants moved out until judgment, plus credit for Gillingham's one-half of the down payment ($900); and reimbursement to plaintiff of $1,125 for tile and roof work expense ($225) and credit for his share of one-half of the down payment ($900). Defendant contends that plaintiff should only have been granted a one-sixteenth interest based on their total relative expenditures on the property. We disagree.

■ Part payment of the purchase price, not subsequent monetary contributions, gives rise to a resulting trust to the extent thereof. (See 7 Witkin, Summary of Cal. Law, *supra,* Trusts, § 126, p. 5484.) The rule is that where one person pays part of the purchase price and title is taken in another's name, the payor cannot secure a greater interest in the property by way of a resulting trust than the proportion of the amount he paid bears to the total *purchase price. (Neusted* v. *Skernswell* (1945) 69 Cal.App.2d 361, 367-368 [159 P.2d 49]; see Rest.2d Trusts, § 454; 5 Scott on Trusts, *supra,* § 454.1, pp. 3378-3379.) This proportional payment of consideration at the time of conveyance must be distinguished from subsequent monetary contributions to make improvements on property or for installment payments after the title has been acquired, which do not secure an interest by way of a resulting trust. (See *Keene* v. *Keene* (1962) 57 Cal.2d 657, 667 [21 Cal.Rptr. 593, 371 P.2d 329]; *McQuin* v. *Rice* (1948) 88 Cal.App.2d 914, 917-918 [199 P.2d 742]; 7 Witkin, *supra,* Trusts, § 126, p. 5484.)

■ Here, plaintiff has met his burden to definitely establish that he contributed one-half of the purchase price and therefore was entitled to a resulting trust in one-half the proceeds. (See *Socol* v. *King* (1950) 36 Cal.2d 342, 348 [223 P.2d 627].)

The evidence showed, and the trial court found, that plaintiff and Gillingham each contributed one-half of the down payment. The remainder of the purchase price was secured by a purchase money deed of trust. Such a trust deed imposed neither personal liability nor detriment on defendant. (*Stone* v. *Lobsien* (1952) 112 Cal.App.2d 750, 756 [247 P.2d 357].) Thus, it is apparent that defendant did not lend her credit at all to the purchase and her signing of the deed of trust did not entitle her to any beneficial interest in the property. (*Ibid.*; see also Rest.2d Trusts, *supra,* § 456, com. (f); 5 Scott on Trusts, *supra,* § 462.2, p. 3417.)

Nor did her payments on the trust deed note while she resided on the premises entitle her to a beneficial share. In contrast to *Bishop* v. *Freeman* (1949) 90 Cal.App.2d 861, 863 [203 P.2d 854], upon which defendant

relies, plaintiff herein alleged and the court found, on sufficient evidence, that those payments were intended as rent applied to the trust deed merely for convenience and not as payments on the purchase price.[3]

Similarly, insofar as the involuntary trust is deemed a constructive trust, plaintiff was entitled to a one-half interest to prevent defendant from being unjustly enriched. Indeed, it has been pointed out that a person who has paid only a part of the purchase price may be entitled to an entire beneficial interest in the property purchased where the circumstances are such that he is entitled to enforce a constructive trust. (See 5 Scott on Trusts, *supra*, § 454.2, p. 3380.)

Accordingly, the trial court properly structured the judgment by awarding plaintiff one-half of the proceeds after reimbursing defendant for her subsequent monetary contributions for improvements as well as the utility bills and bank payments while the house was unoccupied.

The judgment is affirmed.

Schauer, P. J., and Johnson, J., concurred.

---

[3]The finding is adequately supported by plaintiff's testimony and corroborated by defendant's testimony that when she rented the premises to others, the tenants made the bank payments as part of their rental.