[Civ. No. 25358.    First Dist., Div. Four.    July 18, 1969.]

RUSSELL E. HILL, Plaintiff and Respondent, v. ELIZA-
BETH YOUNKIN, Individually and as Executrix, etc.,
Defendant and Appellant.

Thomas, James & Pendleton and Douglas H. Pendleton for Defendant and Appellant.

Johnson, Speed & Johnson and Robert W. Speed for Plaintiff and Respondent.

DEVINE, P. J.—A judgment quieting title to real property was awarded to plaintiff against a claim asserted by appellant individually and as executrix of the will of the parties' deceased child. Appellant as an individual is the sole devisee and legatee.

Plaintiff Russell E. Hill and his first wife, defendant Elizabeth Younkin, were divorced in 1946. The maiden name of the testatrix under whom appellant claims was Mildred Hill. After the divorce of her parents, she married William Ivie, who died about eight months after the marriage. Russell Hill remarried in 1950. Meanwhile, he had acquired the property which is the subject of this lawsuit. It was his separate property. Shortly after the purchase of the property, Russell deeded it to his daughter, but he continued to maintain the property at all times, made improvements, and paid the taxes. Mildred knew that the property had been conveyed to her. In 1955, she developed Hodgkin's disease and at about this time she reconveyed the property to respondent, Russell.

On May 31, 1957, respondent again executed a deed to the property, naming Mildred as grantee. The deed, however, was not delivered to Mildred; at no time did she have it in her possession; she was unaware of its existence until she was told of it by her grandmother in 1964. The deed was prepared by an attorney, who warned Hill of the dangers of transferring title because Mildred might refuse to reconvey, but Hill in-

sisted upon going ahead. The attorney caused the deed to be recorded and mailed it back to Hill. In 1965, Hill asked Mildred to reconvey but she refused. She died June 21, 1965. During all of the years respondent had remained in possession of the property and paid the taxes, but shortly after Mildred's death appellant paid the taxes before respondent tendered payment thereof.

In this suit to quiet title, respondent pleaded that the deed was never delivered to the decedent, and that respondent never intended to transfer title to her. The pretrial conference order states defendant's contentions to be: 1) that there was a delivery and that plaintiff at all times acknowledged the property to belong to Mildred until he discovered that she was suffering from a fatal illness; 2) that if the transfer was not made as a gift, it was made for the purpose of defeating plaintiff's second wife, Sophie Hill, who had commenced a divorce action, and that therefore plaintiff may not have quieting of title because of unclean hands.

The trial judge found that there had been no delivery of the deed, either physically or constructively. Appellant makes no contention presently that the transaction constituted a gift. She does contend that the deed was executed with intent to defraud plaintiff's creditors, and that therefore plaintiff is not entitled to the assistance of a court of equity in quieting title.

Plaintiff testified, quite frankly, that his reason for executing the deed was that he was "scared of lawsuits." The lawsuits to which he referred were an actual one, a suit for divorce which had been filed by Sophie about two months earlier, and a potential lawsuit which might arise from an automobile accident in March 1957.

We need not discuss at length the divorce case. It went only to the interlocutory decree stage. The parties reconciled sometime in 1958. Whatever fraud may have been intended by plaintiff against his wife, Sophie, was purged by the reconciliation and the absence of any demand on Sophie's part for payment of alimony. (*Womack* v. *Womack*, 242 Cal. App.2d 572 [51 Cal.Rptr. 668].) Indeed, there was uncontradicted testimony that the ordered alimony was paid in full.

There remains the matter of the automobile accident. In March 1957, respondent drove through a stop sign and came into collision with a vehicle driven by a Mr. Toschi. Respondent was charged with drunken driving. The Toschi car, which was valued at $900, was "totaled." The Toschis' insurance

company paid the loss, except for $100 which was deductible.* Mrs. Toschi's expenses for personal injuries were about $200 or $300. Mrs. Toschi has a residual scar on her forehead, which she is able to cover with her hair. She makes some complaint of headaches. Her attorney negotiated with Mr. Hill's counsel and her claim was settled for $600. Hill had told her at a meeting that he had no property and no insurance. She relied on Mr. Hill's statement and on the advice of her counsel that because Hill had nothing the settlement should be made.

Respondent argues that the rule which ordinarily prevents a fraudulent conveyancer from getting relief by judicial action does not apply because the transfer never did take place. This is so, respondent argues, because there was no delivery and delivery is essential to the vesting of an interest in the grantee. This is a doubtful proposition. One of the purposes of denying relief is to dissuade owners of property from cheating creditors. If one could avoid the rule by omitting the delivery of a deed but otherwise making it appear to be a regular transaction, the dissuasion would be minimized. If a putative grantor must seek assistance of the court to quiet title against an instrument which he has allowed to be recorded, it would seem that the rule of clean hands should be taken into consideration.

But the rule that he who comes into equity must come with clean hands must not be applied where to do so would create an injustice. (*Womack* v. *Womack, supra.*) It is neither proper nor necessary to sacrifice justice in order to vindicate the honor of the court. (*Nealis* v. *Carlson*, 98 Cal.App.2d 65, 69 [219 P.2d 56].) Considering the circumstances of this case, we conclude that the trial judge was correct in declining to apply the "clean hands" doctrine. Some of these circumstances are:

1. There is evidence that the value of the property was about $8,900 an acre, and there were over 10 acres in the parcel. This must be compared against the claim that was asserted by Mrs. Toschi. Although the *intent* of the grantor to defraud is of prime importance, nevertheless a court of equity must consider all of the facts in order to decide whether or not it shall grant relief to the plaintiff.

2. The trial court found that Mrs. Toschi was not de-

---

*Nowhere in the pleadings was intended fraud upon the insurance company mentioned. The subject is mentioned in one of appellant's briefs, but the trial judge was not asked to make any finding about it.

frauded. In doing so, the court probably had in mind the moderate nature of her injuries, the facts that she was represented by counsel, that she did not file an action, that at no time had she sought rescission of the release, and, as the judge remarked, that there was some possibility of contributory negligence in that she had testified that the Toschi car had run into that of Hill. The court also found that at the time of the deed, plaintiff was in an "upset and unstable mental and emotional condition," a finding supported by evidence that at about that time he was sent to a mental hospital. We do not mean by this that the court found respondent mentally incompetent to execute a deed, but that in considering what a court of equity should do, the judge was entitled to take this circumstance into account.

3. In the pretrial conference order nothing is said about the Toschi claim, but only about the matter of the divorce. Although the Toschi matter was presented at the trial and decision upon it was made, nevertheless it would seem to have come into the lawsuit as a rather belated and perhaps secondary contention.

Appellant makes something of the fact that respondent, while he was drinking, boasted of a transaction many years before in which he had concealed property from his first wife. This conversation was denied by him. But, in any event, the clean hands rule does not call for denial of relief to a plaintiff guilty of any past improper conduct; it is only misconduct in the particular transaction or connected with the subject matter of the litigation which is a defense. (4 Witkin, Summary of Cal. Law (1960) Equity, § 9, p. 2793.)

Appellant demanded a jury trial. This was properly refused because there was no issue of possession, respondent having been in possession continuously. The suit to remove the cloud, therefore, was equitable in nature. (*Thomson* v. *Thomson*, 7 Cal.2d 671, 681 [62 P.2d 358, 117 A.L.R. 1].) Also, the court properly decided against appellant's assertion of laches upon the finding that plaintiff demanded reconveyance on or about May 1, 1965, and that he acted with diligence in filing the action on or about September 23, 1965.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied August 1, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1969.