[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 828 
OPINION
This is an appeal from an order in a probate proceeding that denied a petition by petitioners Theodore Encinas and *Page 829 
Ofelia Encinas for a decree adjudging and declaring petitioners to be the owners of certain real property.
 I The Factual Background
Four parcels of real property were originally owned by petitioners. On December 4, 1973, by grant deeds, petitioners conveyed these parcels to their married daughter, Maria Astrid Blanco. These conveyances were made pursuant to an oral understanding between petitioners and Maria that Maria would hold title in trust for petitioners and reconvey the parcels upon request of petitioners. Maria furnished no consideration for the transfers.
At the date of petitioners' conveyances to Maria, there was pending against petitioner Theodore Encinas a medical malpractice action that had been filed by Esmilia Topete. Mrs. Topete had been a patient of Theodore Encinas who was a chiropractor and in his late seventies at the time. The Topete suit sought damages of $150,000.
According to Theodore's testimony, the transfers to Maria were made at the suggestion of Theodore's attorney who was representing him in the Topete-Encinas action.
Following the transfers to Maria, Theodore continued to collect the rents from the tenants and pay the taxes and the expenses for repairs to the four parcels. At no time did Maria display or assume any acts of ownership or control over any of the four parcels of real property.
On March 13, 1975, Maria died suddenly. She died intestate and was survived by her husband, Victor, and their two children who were minors. Prior to Maria's death, no request had been made by Theodore and Ofelia for a return of the properties.
In August 1975, in a court trial, judgment was rendered in favor of petitioner Theodore and against Esmilia Topete in the malpractice action. Thereafter, petitioners requested reconveyance of the properties from Victor Blanco, the surviving husband of Maria. Victor complied and executed grant deeds in favor of petitioners. The estate of Maria was in the process of probate and the interest of Victor in the properties involved constituted a one-third interest with a two-thirds interest resting in *Page 830 
Maria's two minor children. It was this two-thirds interest that petitioners were seeking to reach by their petition filed in the probate proceedings involving the estate of Maria Blanco.[1]
Respondents are the two minors, Victor T. Blanco and Richard J. Blanco, by their guardian ad litem. The trial court's order from which the appeal has been taken denied the petition and declared and adjudged that the ownership interests in the four parcels of real property were vested in the two minor children of Maria as to an undivided two-thirds interest and in petitioners Theodore Encinas and Ofelia Encinas as to an undivided one-third interest.
Although there were no written findings of fact and the court's order was silent as to the basis for the order, it is clear from statements of the court that petitioners Theodore and Ofelia were denied relief on the ground that the conveyances to Maria were made by petitioners with intent to defraud Esmilia Topete as a creditor of petitioners. Hence, under the doctrine of "clean hands," petitioners were denied the right of recovery.
 II The Doctrine of Clean Hands — The Effect of a Grantor's Unclean Hands Upon His Right to Recover Property Conveyed With Intent to Defraud a Creditor
On this appeal, petitioners assert that the doctrine that a person with unclean hands may not recover in a court of equity was improperly applied by the trial court. Although petitioners state that the facts are not in dispute, nevertheless, petitioners set forth — as undisputed — facts which would tend to negate any intention by petitioners to defraud Mrs. Topete who had a pending malpractice action against petitioner Theodore at the *Page 831 
time of the property transfers. (1) Petitioners' assertion as to what constituted undisputed facts below is unacceptable in light of the well-settled standard of appellate review which requires the appellate court to "view the facts in the light most favorable to [the prevailing party below], giving [that party] the benefit of every reasonable inference and resolving all conflicts in [that party's] favor. . . ." (Horn v. GeneralMotors Corp. (1976) 17 Cal.3d 359, 367 [131 Cal.Rptr. 78,551 P.2d 398].)
We must start with the premise, therefore, that, in spite of the testimony that Theodore and Ofelia transferred their properties solely because Theodore's attorney in the Topete malpractice action so advised him, there was evidence to justify the trial court's implied finding that Theodore and Ofelia had an intent to put their properties beyond the reach of Mrs. Topete in the event she were to obtain a judgment for damages against Theodore.
Civil Code section 3439.07 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."
Civil Code section 3439.01, for the purposes of the Uniform Fraudulent Conveyance Act (Civ. Code, § 3439.01 et seq.), defines a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."
(2) At the time of the conveyances to Maria, Mrs. Topete was a "creditor" of Theodore Encinas within the meaning of Civil Code section 3439.01, since she had a contingent claim for damages.(3) The rule of law which normally precludes a grantor from recovering his property from a grantee when the conveyance is deemed a fraudulent conveyance is known as the equitable principle of "clean hands." The application of the doctrine was stated in Tognazzi v. Wilhelm (1936) 6 Cal.2d 123, 125 [56 P.2d 1227], in the following language: "`[H]e who executes a conveyance of property for the purpose of hindering, delaying or defrauding his creditors, cannot by any action in equity obtain a reconveyance from his grantee, nor can anyone claiming under him, except an innocent purchaser.'"
In Tognazzi, plaintiff sought to get back property he had conveyed to his daughter to protect against the possibility of a deficiency judgment on a deed of trust given by plaintiff to a savings and loan association. The *Page 832 
complaint alleged that no deficiency action had ever been filed. In upholding the trial court's sustaining of a demurrer to the complaint, the court remarked: "The admitted purpose of the transfer was to defeat an existing creditor whose claim, in part, might thereafter assume the form of a deficiency judgment. The fraudulent scheme was therefore fully consummated upon the conveyance of the property. It no longer remained, as appellant urges, an unconsummated intent to defraud." (Tognazzi, supra,6 Cal.2d 123, 125.) (Italics added.)
In relying upon Tognazzi as stating a rule that supports the trial court's order in the case at bench, respondents assert that there is no difference between an existing creditor involved inTognazzi and a contingent tort creditor involved in the instant case. (4) Certainly, for purposes of the Uniform Fraudulent Conveyance Act, a tort claimant before judgment is rendered is a "creditor" within the meaning of Civil Code section3439.01 And it was stated in Smedberg v. Bevilockway (1936)14 Cal.App.2d 312, 316 [58 P.2d 173]: "`"that one having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, is upon recovering judgment, entitled to avoid a fraudulent transfer antedating the commencement of his action". . . .'"
In the instant case, however, we are dealing with the question of the right of a grantor who has made a conveyance to a grantee for the purpose of hindering or precluding a tort claimant from levying on the grantor's property in the event the tort claim matures into a judgment.
 III Dissipation of a Grantor's Original Unclean Hands to Preclude Application of the Clean Hands Doctrine
The main thrust of petitioners' argument on appeal is that the evidence establishes as a matter of law that the original "unclean hands" by petitioners became dissipated by subsequent events to preclude application of the "clean hands" doctrine to petitioners' action to recover the properties conveyed to their daughter Maria.
Petitioners assert that there are several situations in which a grantor's original "unclean hands" may become dissipated to preclude application of the "clean hands" doctrine. Thus, it has been said that "[t]he fact that a *Page 833 
court of equity is the proper court for [an action], however, does not necessarily dictate the conclusion that the doctrine of clean hands is a complete defense. It is well settled that public policy may favor the nonapplication of the doctrine as well as its application." (Radich v. Kruly (1964) 226 Cal.App.2d 683, 686 [38 Cal.Rptr. 340].) "Whenever an inequitable result would be accomplished by application of the `clean hands' doctrine the courts have not hesitated to reject it." (Womack
v. Womack (1966) 242 Cal.App.2d 572, 579 [51 Cal.Rptr. 668].)
In Soon v. Beckman (1965) 234 Cal.App.2d 33, 36 [44 Cal.Rptr. 190], the court set forth the principle that: "`In applying the maxim that he who comes into equity must do so with clean hands, . . . the misconduct must be intimately connected with the matter in which he seeks equitable assistance, and of such aprejudicial nature to the rights of another that it would beinequitable to grant him that assistance.'" (Italics in original.)
The case of Wiley v. Wiley (1943) 59 Cal.App.2d 840, 842 [139 P.2d 950], an annulment action, set forth the "clean hands" doctrine in the following language: "It is settled that the act upon which equity may refuse relief to a plaintiff because he does not come into court with clean hands must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." (Italics added.) The views of the Supreme Court on this same subject were aptly stated in Bradley Co. v. Bradley (1913) 165 Cal. 237, 242 [131 P. 750]: "It is not every wrongful act, nor even everyfraud, which prevents a suitor in equity from obtaining relief. His conduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief. It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant, . . ." (Italics added.)
An instructive case on the "clean hands" doctrine is that ofTinney v. Tinney (1963) 211 Cal.App.2d 548 [27 Cal.Rptr. 239] . In Tinney, plaintiff and defendant were formerly married and later divorced. Plaintiff sued his former wife to establish his sole ownership of property located in Oklahoma. Plaintiff was in the process of selling some of the property and had forged defendant's name to a deed to the buyer. The trial court found that defendant had no interest in the property even though her signature on a deed had been forged. In holding that defendant could not validly assert a defense of lack of clean hands by plaintiff, the court relied upon the principles set forth inBradley Co. and Wiley, and concluded: "Defendant does not in any way suggest how the forgery, even if *Page 834 
accomplished by plaintiff, has prejudiced any of her rights. The trial court found that the husband was the sole owner of the subject properties. The wife's asserted interest in the properties could not have been divested by the forgery because she in fact had no interest therein. It is thus apparent that the defense of unclean hands is not here applicable." (Tinney,supra, 211 Cal.App.2d 548, 555.)
(5) The essence of the "clean hands" doctrine is not that the plaintiff's hands are dirty but "that the manner of dirtying renders inequitable the assertion of such rights against the defendant." (Republic Molding Corporation v. B.W. PhotoUtilities (9th Cir. 1963) 319 F.2d 347, 349.) (6) The principle that the equitable doctrine of "clean hands" is not to be applied mechanically, because to do so may well create an inequitable result, finds application in the rule that a grantor may purge himself of the initial fraud and thus preclude application of the "clean hands" doctrine. This equitable rule of law is well established.
One clear way for a grantor to purge himself of the fraudulent conduct is to dispose of the creditor's claims by payment orsettlement. Thus, in Carman v. Athearn (1947) 77 Cal.App.2d 585
[175 P.2d 926], a grantor made a conveyance of real property for the purpose of defeating claims by his first wife and other creditors. In rejecting the doctrine of "clean hands" as a defense to plaintiff's claim of an ownership interest in property being held by defendant, the court set forth the applicable principle in these words: "This so-called `clean hands' doctrine is not here applicable for several reasons. In the first place, the evidence here shows that plaintiff has purged himself of his prior fraudulent conduct. His uncontradicted evidence was to the effect that the claims of his first wife have been fully paid. While there was evidence by defendant that plaintiff owed other creditors, plaintiff testified the claims of these creditors had also been settled.
The trial court chose to believe plaintiff and to disbelieve defendant. No creditor testified that plaintiff owed him one cent. Under such circumstances the law is well settled that the `clean hands' doctrine has no application." (Id., at p. 598.) (Italics added.)
The case of Hill v. Younkin (1969) 274 Cal.App.2d 880
[79 Cal.Rptr. 509], is also illustrative of the principles set forth in Carman, Tinney and Republic Molding. Here a grantor conveyed to his daughter certain real property. In seeking to obtain the property back in a quiet title proceeding against the executrix of the will of the daughter who died while still holding title, the grantor admitted facts making the conveyance a transfer to defraud creditors by testifying that his reason for executing *Page 835 
the deed was that he was "scared of lawsuits." The lawsuits consisted of a pending divorce action brought by his wife and a potential lawsuit arising out of an automobile accident. However, the grantor and his wife became reconciled and the grantor settled with the claimant the exposure arising out of the automobile accident.
In sustaining a judgment for the grantor, the Hill court remarked that "[w]hatever fraud may have been intended by plaintiff against his wife, Sophie, was purged by the reconciliation and the absence of any demand on Sophie's [the wife's] part for payment of alimony." (Id., at p. 882.) The court recognized that the rule — precluding a grantor from recovering his property transferred to defraud creditors — is designed to dissuade owners of property from attempting to cheat creditors by this device of making a transfer of their property to a relative or trusted friend. This rule is an example of the principle that, a plaintiff who seeks the power of the court to grant him equitable relief, must enter the court doors with clean hands. However, the doctrine of "clean hands" was not intended to be a sterile, legalistic rule of law. "But the rule that he who comes into equity must come with clean hands must not be applied where to do so would create an injustice. [Citation.] It is neither proper nor necessary to sacrifice justice in order to vindicate the honor of the court. [Citation.]" (Hill, supra,274 Cal.App.2d 880, 883.)
The circumstances which existed in the Hill case which made it appropriate for the trial judge not to apply the "clean hands" doctrine were primarily the following: First, the divorce case had been settled by reconciliation. There was an absence, therefore, of any alimony liability, the grantor having paid the temporary alimony ordered. Second, there was evidence that the value of the property transferred was about $8,900 an acre in a parcel of only 10 acres — making the value of the property transferred approximately $89,000, compared with the miniscule value of the personal injury claim against the grantor, which was settled for $600. Third, the personal injury claimant was not defrauded in any sense since she settled her claim with the grantor.
It is significant that the Hill court made this observation: "Although the intent of the grantor to defraud is of prime importance, nevertheless a court of equity must consider all of the facts in order to decide whether or not it shall grant relief to the plaintiff." (Hill, supra, 274 Cal.App.2d 880, 883.) (Italics in original.) *Page 836 
In Stockwell v. McAlvay (1937) 10 Cal.2d 368 [74 P.2d 504], another case of significance with respect to the "clean hands" doctrine, plaintiffs, a husband and his wife, had conveyed to the wife both real property and some shares of stock in an effort to defeat a judgment of $ 16,000, which defendant had obtained against the husband. The shares of stock, although of a value of $60,000, were obtained by defendant for $750 as a result of a levy of execution and sale to defendant. Plaintiff husband filed a petition in bankruptcy but defendant received full payment of his judgment of $16,000 from assets in the hands of the trustee in bankruptcy. In Stockwell, the plaintiffs, husband and wife, sought to set aside the sheriff's sale of the shares of stock to defendant because of actions by defendant and his attorney that lulled plaintiff husband into a sense of security with the result that he failed to take action to preclude the sheriff's sale.
In Stockwell, the trial court gave judgment for plaintiffs, thus permitting plaintiffs to recover from defendant the shares of stock which had been transferred by husband to wife to defeat the husband's judgment creditor — the defendant.
The Stockwell defendant argued that, because of the fraud of the plaintiff husband, the doctrine of clean hands applied and plaintiffs had no standing to seek relief against the defendant and recover the shares of stock. In rejecting this contention the court held that, since defendant had received full satisfaction of his judgment against the plaintiff husband, he had not been injured by the plaintiff's fraud and, in addition, plaintiff "has been purged of his fraud. It follows that the doctrine of clean hands has no application in this case." (Stockwell, supra,10 Cal.2d 368, 374.)
In the case at bench we do not have a case of a grantor purging himself of his fraud by either payment or settlement of the creditor's claim. The question presented is whether the trial
of a creditor's claim against the grantor and the rendition of ajudgment on the merits in favor of the grantor constitutes a purging of the fraud, or, a situation analogous thereto, to preclude the application of the "clean hands" doctrine.
Certainly, the case at bench presents no factual situation of an inequitable or unjust result insofar as the defendants are concerned. Since neither the defendant minor children nor their mother, the grantee, provided any consideration to plaintiff for the property conveyances from plaintiff to the mother, and since the minor defendants obtained title to the two-thirds interest in the property by reason of the mother's untimely *Page 837 
death, without having executed a will, no valid argument can be made that plaintiffs' fraudulent conveyance has prejudiced any of the rights of the minor defendants.
In the absence of any inequity to the defendants in the case at bench, a trial of the creditor's claim against the grantor Theodore Encinas and the rendition of a judgment on the merits against the creditor would appear equally efficacious to constitute a purge of the grantor's fraud just as if payment orsettlement had been effectuated. A fairly persuasive analogy is found in the situation presented by Weisenburg v. Cragholm
(1971) 5 Cal.3d 892 [97 Cal.Rptr. 862, 489 P.2d 1126].
The Weisenburg case dealt with an interpretation of Civil Code sections 3439.01, 3439.09 and 3439.10, which are parts of the Uniform Fraudulent Conveyance Act. As indicated previously, section 3439.01 defines a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Section 3439.09 gives a creditor with a matured claim the right to have a fraudulent conveyance set aside to the extent necessary to satisfy his claim. Section 3439.10 gives the creditor with an unmatured claim the right also to have a fraudulent conveyance set aside under certain specified conditions.
In Weisenburg, plaintiff initially obtained a judgment for money damages against one Thomas who conveyed certain real property to defendant Cragholm which rendered Thomas insolvent. Plaintiff then filed an action against defendant Cragholm to have set aside the conveyances made by Thomas as being fraudulent as to plaintiff. This is the action involved in the Weisenburg
case. The trial court rendered a judgment in plaintiff's favor and defendant Cragholm appealed. While the appeal by Cragholm was pending, plaintiff's money judgment against Thomas was reversed on appeal.
The Weisenburg court reversed the trial court's judgment setting aside the Thomas conveyance to defendant Cragholm because of the reversal of the money judgment which plaintiff had secured against Thomas. The Weisenburg court held that "[w]hen that judgment [the money judgment] was unqualifiedly reversed, however, the effect was the same as if it had never been entered, . . . Under the circumstances, since plaintiff is not entitled to the remedy [to have the conveyances set aside] unless he has shown that he is a creditor of the Thomases, and the basis for the finding *Page 838 
that he was such a creditor has been eliminated, reversal of the judgment herein is required." (Weisenburg, supra, 5 Cal.3d 892, 896-897.)
(7) So, in the case at bench, the rendition of a judgment on the merits in favor of plaintiff Theodore against Mrs. Topete in her malpractice action against him, establishes that she wasnever a creditor, either matured or contingent, of plaintiff, Theodore. Hence, the conveyances from the plaintiffs to their daughter Maria cannot be deemed to have been conveyances to defraud creditors. There was no one defrauded and there was no creditor.
In view of the Supreme Court's decision in Weisenburg, the earlier Supreme Court case of Tognazzi, supra, 6 Cal.2d 123, is not controlling. On the contrary, it is clearly distinguishable. In Tognazzi, the creditor sought to be defrauded by the grantor was an existing creditor and remained an existing creditor. The only showing made in Tognazzi was that the creditor had not filed a suit seeking a deficiency judgment. In Weisenburg,
however, the existing creditor was held to be not a creditor at all by virtue of a reversal of his money judgment against the grantor.
The case at bench, therefore, is governed by Weisenburg and not Tognazzi, since the judgment in favor of the petitioner here, Theodore Encinas, and against Mrs. Topete, established that Mrs. Topete was never a creditor of petitioner — Theodore Encinas.
Although respondents urge that the trial court considered all the circumstances in reaching the decision to apply the "clean hands" doctrine and deny relief to petitioners, there are no facts deducible from the record below to establish any inequity to respondents or to avoid application of the rule that a grantor cannot be denied equitable relief if his fraudulent intent and actions become purged of the fraud because the alleged creditor sought to be defrauded by the conveyance is established, on the merits, by court action, to have possessed no cause of action against the grantor, and hence, to have been no creditor at all.
The order is reversed.
Files, P.J., and Alarcon, J., concurred.
[1] Petitioners' petition was filed in the Maria Blanco estate proceedings pursuant to Probate Code section 851.5 This section provides, insofar as pertinent to the instant case, that "[i]f a person dies in possession of, or holding title to, real or personal property which, or some interest in which, is claimed to belong to another, . . . the executor, administrator, or any claimant may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated. . . ." "[P]rior to 1972, the superior court acting in the exercise of its probate jurisdiction was without power to try title to property asserted by a stranger to the estate as against the estate. [Citations.] This limitation on probate court jurisdiction with its judicially created exceptions was subject to strong criticism, and abrogated in 1972 by amendment of Probate Code, section 851.5 The Legislature thereby (§§ 851.5, 852, 853, Prob. Code) gave the probate court the power to determine controversies concerning title to property where the party asserting an interest is claiming adversely to the estate [citations]." (Richer v. Superior Court (1976) 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].) *Page 839